## SQUYRES v. ROWAN & NICHOLS OIL CO.

### No. 13591.

Court of Civil Appeals of Texas.
Fort Worth.
Sept. 17, 1937.

Rehearing Denied Oct. 22, 1937.

Frank R. Graves and Oscar Reed, both of Fort Worth, for appellant.

George C. Kemble, Rice M. Tilley, and Phillip Tocker, all of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

This appeal is from a judgment in a garnishment proceeding arising from the facts and pleadings hereinafter related.

On February 3, 1932, the creditors of Clyde B. Mitchell filed in the district court for the Ninety-Sixth judicial district a suit against Clyde B. Mitchell. The petition asked that a receiver be appointed for certain real estate consisting mostly of oil and gas leases and oil properties in various parts of the state, an undivided interest in which Mitchell had assigned to different purchasers throughout the state. That suit was styled L. W. Freelove et al. v. Clyde B. Mitchell et al., and the plaintiffs in the suit were purchasers from Mitchell of interests in those leases. Upon the petition so filed, a receiver was appointed who took possession of the properties belonging to Mitchell.

Thereafter, on October 6, 1934, and before any sale or distribution of any of the assets was made by the receiver, the case was removed to the United States District Court for the Northern District of Texas by order of Hon. James C. Wilson, Judge, on application of the plaintiffs in that suit. In connection with that application, plaintiff alleged the insolvency of Clyde B. Mitchell and prayed for proceedings against his assets under the provisions of the Bankruptcy Act. The petition so filed by the plaintiffs in the case was under the provisions of title 11, c. 3, § 21, of the National Bankruptcy Act, U. S. Code Annotated.

On the same day that petition was filed, Mitchell filed in the bankruptcy proceedings his petition alleging his insolvency, and praying for composition with his creditors under the provisions of title 11, c. 3, § 30, of the Bankruptcy Act, U. S. Code Annotated, which was an amendment of the original act. His petition included a schedule of his properties and a list of his creditors, as required by that amendment of the act. It was further alleged in his petition for composition that he had procured an agreement of the required number of his creditors for a composition settlement of their respective claims. By order of court, both of those petitions were referred to Hon. Glenn Smith, referee in bankruptcy, for hearing.

On December 4, 1934, some two months after the institution of the bankruptcy proceedings, Clyde B. Mitchell and the

Rowan & Nichols Oil Company entered into a written contract, by the terms of which Mitchell agreed to assign to the Oil Company oil and gas mineral interests in several different tracts of land, to be paid for by the Oil Company upon certain conditions stipulated in the contract.

On December 21, 1934, there was a hearing by the referee in bankruptcy of Mitchell's application for composition with his creditors after due notice of the filing of such application, at which time a majority of the creditors were present. At that hearing the referee confirmed and approved the agreement of settlement entered into by the majority of the creditors that after payment of certain preferred claims the balance remaining of the assets belonging to Mitchell should be divided, and 49 per cent. thereof should be turned over to the creditors and 51 per cent. to Rowan & Nichols Oil Company, as assignee of Mitchell. The referee made due report of the findings so made by him to the bankruptcy court, and the same was duly approved and confirmed on July 5, 1935. Thereafter, application was made by the creditors to the federal court for an order allowing a sale of Mitchell's assets to be made by the receiver theretofore appointed by the state district court, in which the Freelove suit had been instituted, and for a division of the proceeds of sale in the proportions already found and recommended by the referee in bankruptcy. That application was granted by the federal court, and in accordance with the order so made the receiver in the state court sold the assets and turned over the proceeds thereof to Robert B. Violette, custodian already appointed in the bankruptcy proceedings. The federal court then ordered a distribution of those proceeds to be made by the custodian in the proportions and to the parties recommended by the referee. The distribution so ordered was made by the custodian, and Rowan & Nichols Oil Company received therefrom the sum of $15,700.

W. O. Squyres was a creditor of Clyde B. Mitchell at the time such bankruptcy proceedings were instituted; holding Mitchell's promissory note in the principal sum of $7,586.40. In the application made by Mitchell for composition with his creditors, he did not list Squyres as one of them; nor did Squyres appear at the hearing by the referee at the time the action was taken thereon.

On November 8, 1935, Squyres recovered a judgment in the district court of the Forty-Eighth judicial district of Texas, by default against Mitchell on the note mentioned above, for the sum of $9,057.50, which included the principal and accrued interest thereon at the rate of 10 per cent. per annum from the date of the judgment, and 10 per cent. attorneys' fees.

Under provisions of title 11, c. 3, § 31, of the Bankruptcy Act, U. S. Code Annotated, and within six months after the federal court had approved and confirmed the findings and recommendations of the referee on Mitchell's application for composition with his creditors, and after the funds on hand had been distributed by the custodian under order of that court, W. O. Squyres filed in the federal court his application, alleging his said judgment of indebtedness against Mitchell, the insolvency of Mitchell, and praying for an order setting aside the decrees confirming the referee's findings and report, and ordering the division of Mitchell's assets among his creditors, and for reinstatement of Mitchell's application for composition.

As grounds for that application, Squyres alleged the recovery of his judgment against Mitchell, mentioned above, and that it was unpaid. And, further, that he did not learn of the insolvency proceedings and of the hearing before the referee in bankruptcy until long after such hearing, and after the assets had been distributed by the custodian in bankruptcy; that after he had acquired knowledge of the bankruptcy proceedings he was induced to refrain from sooner presenting his claim of indebtedness against Mitchell by certain arguments fraudulently made by the attorneys for Mitchell and the Rowan & Nichols Oil Company, to the effect that such a proceeding by him would result in final loss of his entire debt, and by reason thereof he was not guilty of negligence in failing to have his claim adjudicated, at the hearing by the referee, and there having his rights to participate in the distribution of Mitchell's assets determined. The applicant further complained, in effect, that the allowance to Rowan & Nichols Oil Company of the sum of $15,700 would be an illegal preference as against applicant and other creditors who did not participate in any of the bankruptcy proceedings, and in excess of what was justly due the Oil Company under its contract with Mitchell.

On February 7, 1936, that application of W. O. Squyres, together with another for like relief, was heard by Judge James C. Wilson, in the federal court, and the following judgment was rendered:

"On this day, the 7th day of February, A. D. 1936, came on to be heard the motions or petitions of W. S. Langford and W. O. Squyres to set aside and vacate the confirmation and final decree heretofore entered in the above styled and numbered cause on the 5th day of July, 1936, and to re-open said cause for the purpose of establishing the claims of the said W. O. Squyres and W. S. Langford, together with the motions of Rowan & Nichols Oil Company, Rice M. Tilley and Wilson Johnson, Jr., to dismiss said petitions or motions of the said Langford and Squyres, and the Court having heard the evidence adduced in support of all petitions or motions, finds against each of the petitioners or parties presenting said motions upon each and every of the fact issues presented in the respective petitions or motions; and that the said W. S. Langford and W. O. Squyres are not entitled to the relief prayed for in their respective petitions.

"It is therefore ordered, adjudged and decreed by the Court that said petitions or motions of the said W. O. Squyres and W. S. Langford be, and the same are, hereby in all things denied; and that the witness, J. E. Adkins, be, and he is hereby, allowed a fee of $10.00 as an expert witness, which said fee shall be taxed as costs against the petitioners, W. O. Squyres and W. S. Langford, together with the other costs, and it is accordingly so ordered."

No appeal was prosecuted by Squyres from that judgment, nor was it ever modified or set aside by the court rendering it. Therefore, the attack made thereon by plaintiff in the state court was a collateral, and not a direct, attack.

Testimony introduced upon trial of the case now before us was sufficient to support a finding that plaintiff knew of the proceedings in bankruptcy before hearing of Mitchell's application for composition, and also sufficient to rebut his allegation that he was induced to refrain from participating in any of those proceedings by fraud of attorneys for Mitchell and the Oil Company, as alleged in his pleadings in his collateral attack made in a state court on the judgment of the federal court.

On June 4, 1935, during the pendency of the suit by W. O. Squyres against Clyde B. Mitchell in the state district court for the Forty-Eighth judicial district on the promissory note then held by Squyres against Mitchell, mentioned above, plaintiff Squyres filed an affidavit for writ of garnishment against the Rowan & Nichols Oil Company, which was duly served. The garnishee filed an answer thereto on appearance day, admitting an indebtedness by it to Clyde B. Mitchell in the sum of $244.37, but denying any further indebtedness; also alleging that it had no effects of Mitchell in its hands, and that it knew of no other person who was indebted to Mitchell or had any of his effects in hand. Prior to rendition of the judgment against Mitchell in the main case, on November 8, 1935, as noted above, no attack was made by plaintiff on the answer of the garnishee, and no disposition of that garnishment proceeeding was made at the time the judgment was rendered.

After rendition of the judgment, and on February 7, 1936, plaintiff in that case sued out another writ of garnishment against the same garnishee, based on the judgment that had been rendered against Mitchell for the sum of $9,057.50. Upon return day of that writ, judgment by default was rendered in favor of plaintiff for that sum against the garnishee, who at that time had filed no answer to the second writ of garnishment. On the same day the garnishee filed a motion to set aside that judgment, alleging reasons for having failed to file an answer before judgment, and further denying any indebtedness to Mitchell or possession of any effects belonging to him when the writ was served; also denying knowledge of any other person owing Mitchell any sum or having effects belonging to him in hand; also alleging, in effect, that its admission of indebtedness to Mitchell in the sum of $244.37 was incorrect for reasons set out, and withdrawing such admission in its answer to the first writ.

Thereafter, on April 24, 1936, that default judgment was set aside. Plaintiff filed a controverting affidavit to both answers made by the garnishee, in which the contract between Mitchell and the garnishee, of date December 4, 1934, mentioned above, and on which the garnishee based its claim for the allowance made to it by the referee in bankruptcy under its contract with Mitchell, were alleged to have been made in collusion with the garnishee for the purpose of defrauding his other creditors and especially the plain-

tiff, and was therefore void because in violation of the statutes; and, therefore, the garnishee holds the funds so received in the bankruptcy proceedings as trustee for the benefit of plaintiff and other creditors, and should be held accountable to plaintiff therefor in the garnishment proceedings. Plaintiff further alleged that both answers filed by the garnishee were in all things false and made for the purpose of defrauding plaintiff in the collection of his debt against Mitchell.

The garnishee filed an answer to that pleading denying all equities therein claimed, alleging in detail the history of the transaction leading up to and culminating in its contract with Mitchell, of date December 4, 1934, to show that the transaction was in good faith and valid as against the attack made thereon. It also included a charge of fraudulent collusion between plaintiff and Mitchell to procure the judgment sought against the garnishee; and attached to the answer was a copy of a contract in writing between plaintiff and Mitchell entered into before garnishment proceedings for a division between them, share and share alike, of whatever might be recovered from the garnishee by the proceedings in garnishment.

The garnishee also pleaded the judgment of the federal court awarding the Rowan & Nichols Oil Company the amount paid in the bankruptcy proceedings as a bar to plaintiff's suit in garnishment.

The two garnishment proceedings and all issues involved were submitted to and heard by the trial judge at the same time. At the conclusion of the hearing, the court denied plaintiff any relief in either of the garnishment proceedings, and awarded judgment for the garnishee for an attorney's fee of $250 for answering the writs, as against plaintiff Squyres and the Commercial Standard Insurance Company, surety on plaintiff's bond for garnishment. The trial was without a jury, and no findings of fact with conclusions of law by the trial judge appear in the record; but a statement of facts has been brought up.

Plaintiff has appealed.

Appellant invokes the provisions of article 3996, Rev.Civ.Statutes, as amended by Acts 1927, c. 30, § 1 (Vernon's Ann. Civ.St. art. 3996) reading as follows: "Every gift, conveyance, assignment, or transfer of, or charge upon, any estate real or personal, every unit [suit] commenced, or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers, or other persons of or from what they are, or may be, lawfully entitled to, shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This article shall not affect the title of a purchaser, for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

Based on the provisions of that statute, the contention is presented here by two separate propositions that the evidence shows conclusively that the Rowan & Nichols Oil Company paid over to Clyde B. Mitchell, as a consideration for the contract, of date December 4, 1934, at least $1,000, with knowledge of his insolvency and of the pendency of the insolvency proceedings against him, and that the sum so paid was never applied by Mitchell to payment of his debt, but converted to his own use, and therefore the Rowan & Nichols Oil Company was charged with notice of Mitchell's intention to defraud his creditors as a matter of law, and the amount received by that company in the bankruptcy proceedings was subject to the garnishment sued out.

■ It is unnecessary to discuss the merits of those propositions, since the judgment rendered by the federal court awarding to Rowan & Nichols Oil Company the amount paid over to it by the custodian Violette, under orders of that court, was not subject to the collateral attack made thereon, and was a complete bar to the merits of those propositions. Under the provisions of the Bankruptcy Act, before a bankrupt can be discharged the court must find that he has not been guilty of any of the acts or failed to perform any of the duties prescribed in the act which would forbid his discharge. Brown v. Causey, 56 Tex. 340; Alston v. Robinett, 37 Tex. 56; Hoskins v. Velasco National Bank, 48 Tex.Civ.App. 246, 107 S.W. 598. Unquestionably, that decree of the federal court was binding upon appellant after he had invoked jurisdiction of that court to set it aside and grant a rehearing of the whole proceeding. Paggi v. Rose Mfg. Co. (Tex.Civ. App.) 259 S.W. 962 (writ of error refused); Byrne v. Stewart (Tex.Civ.App.)

30 S.W.(2d) 395; Leak v. Halaby Galleries (Tex.Civ.App.) 49 S.W.(2d) 858; 4 C.J. pp. 1324–1326; Scott v. Mutual Reserve Fund, 137 N.C. 515, 50 S.E. 221; Smith v. Smith (Tex.Civ.App.) 123 S.W. 198.

The order of the trial court setting aside its former judgment by default against the garnishee and its subsequent judgment decreeing that the garnishee was not indebted to plaintiff was well supported by the evidence introduced on trial of that issue.

The finality of the judgment of the federal court directing payment to the Rowan & Nichols Oil Company of the amount awarded to it in the composition proceedings, and denial of the application of Squyres to set aside those orders for the purpose of allowing him to participate in that proceeding, was a further bar of plaintiff's claim of right to subject the funds so paid over to the company, to the satisfaction of plaintiff's debt, under and by virtue of the garnishment proceedings, which was the principal relief sought against the garnishee.

All assignments of error are overruled, and the judgment of the trial court is affirmed.